UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOEL DAVID KAUFMAN,<br><br>    Plaintiff,<br><br>v.<br><br>M. E. SPEARMAN, et al.,<br><br>    Defendants. | Case No. 15-cv-02777-JD<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 69, 91, 92, 93, 95, 96, 99 |

Joel David Kaufman, a state prisoner proceeding pro se, has sued under 42 U.S.C. § 1983. He alleges that defendants, Dr. Branch, Dr. Bright and Warden Spearman, were deliberately indifferent to his serious medical needs by not providing a special medical diet due to his food allergies. Plaintiff argues that his allergies to gluten, soy and dairy have resulted respiratory distress that causes vomiting, abdominal pain, itching, hives, psoriasis, bleeding and dizziness. He also alleges he was not receiving the minimal required calories from his meals. This case was referred to the Pro Se Prisoner Mediation Program but did not settle. Defendants filed a motion for summary judgment. Plaintiff filed an opposition, and defendants filed a reply. The motion is granted.

**BACKGROUND**

The following facts are largely undisputed:

Prior to the events of the underlying complaint plaintiff was incarcerated in San Quentin State Prison and was receiving a gluten-free diet. Motion for Summary Judgment ("MSJ"), Mackie Decl. Ex. B. It was noted at a June 16, 2014 medical appointment at San Quentin State Prison that plaintiff was intolerant to gluten, a protein found in wheat, barley and rye, but had a

negative biopsy for celiac disease, which is associated with gluten intolerance. *Id.*; Branch Decl. ¶ 15.[1] San Quentin medical staff also noted that plaintiff had wanted to stop receiving the gluten-free diet because it contained so many carbohydrates and it was difficult for him to feel full, but at the June 16, 2014, appointment, he said that he wanted the gluten-free diet at lunch. Mackie Decl. Ex. B. San Quentin medical staff told him that the food service program did not operate that way and that plaintiff did not qualify for the gluten-free diet. *Id.*

Plaintiff was transferred to Correctional Training Facility ("CTF") on September 10, 2014. Docket No. 32 at 16. Defendant Spearman was the warden at CTF at the relevant time. MSJ Spearman Decl. ¶ 1. Dr. Branch was plaintiff's primary care physician at CTF and Dr. Bright was CTF's Chief Medical Executive and later Chief Physician and Surgeon. MSJ Branch Decl. ¶¶ 1, 4; Bright Decl. ¶ 1. Dr. Bright was Dr. Branch's supervisor. Bright Decl. ¶ 5. Plaintiff indicated to Dr. Branch that he suffered from food allergies and that gluten was a particular concern. Branch Decl. ¶ 10. Dr. Branch reviewed plaintiff's medical records and was unable to find a record of tests to confirm plaintiff had the allergy. *Id.* ¶ 11. Dr. Branch decided to run tests to confirm plaintiff's assertion to ensure that she treated the correct condition. *Id.* ¶ 12.

On or about October 6, 2014, plaintiff's father contacted the prison and stated that plaintiff reported he had lost over twenty pounds since being incarcerated in May due to his allergies preventing him from eating all of his meals. Docket No. 88 at 9. Warden Spearman responded to plaintiff's father, noting that plaintiff weighed 154 pounds on May 5, 2014, and 146 pounds on September 23, 2014. *Id.* at 10. Plaintiff lost eight pounds over the course of four and a half months, and his body mass was normal for his weight and height. *Id.* at 10-11, 18-19.

Dr. Branch researched the appropriate tests to detect an autoimmune response to gluten. *Id.* ¶ 15. Dr. Branch ordered a tissue transglutaminase test (tTG) and an endomysial antibody test. *Id.* The tests came back negative on December 31, 2014. *Id.* ¶¶ 16-18.

Plaintiff's father sent a letter to Warden Spearman on January 30, 2015, stating that plaintiff suffers from psoriasis that would be partially alleviated by lactase enzymes and that he

---

[1] Plaintiff states that he had a biopsy in 2011 to check for celiac disease, but it was negative. Docket No. 86 at 11; Docket No. 88 at 18.

has food allergies. Docket No. 80 at 6-7. On February 5, 2015, Warden Spearman sent the letter to Dr. Bright with a note to look into the concerns expressed about plaintiff's health. *Id*. at 4-5. Dr. Branch ordered tests for allergies to egg white, cow's milk, wheat, rye, barley, oat, peanut, soybean, egg yolk, cheddar cheese, cheese mold, and cocoa. Branch Decl. ¶ 19. On March 23, 2015, those tests also came back negative. *Id.* Based on the results of all the tests, Dr. Branch determined that plaintiff did not suffer from food allergies and the foods she tested were not the cause of his symptoms. *Id.* ¶ 20.

Dr. Branch continued to treat plaintiff's other complaints and discussed his food reactions. *Id.* ¶ 23. Dr. Branch ordered additional allergy tests for soybean, white bean and lentils, which, on March 13, 2016, also came back negative. *Id.* ¶ 24.

Plaintiff suffers from urticaria, a skin reaction, and Dr. Branch hoped to discover whether allergens were causing the symptoms. *Id.* ¶ 25. Dr. Branch referred plaintiff to nondefendant Dr. Abernathy, an outside allergist and immunologist. *Id.* Dr. Abernathy first met plaintiff on May 3, 2016. Branch Decl. Ex. E. Plaintiff told Dr. Abernathy that he was diagnosed as having a gluten sensitivity and being lactose deficient. *Id.* At that appointment, Dr. Abernathy stated that plaintiff should be skin tested for allergies in the future. *Id.* Dr. Abernathy also stated that with respect to food allergies:

- Gluten intolerance, presumably either he's had a biopsy illustrating the problem gatroenterologically or he's had the serologies for gluten sensitivity gliadin and gluten being positive. I think that the rash is a consequence of the gluten sensitivity and has its diagnosis of dermatitis herpetiformis.

- Milk intolerance as he is lactose deficient.

*Id*.

Dr. Branch reviewed plaintiff's canteen purchases to learn what he was consuming outside of prison meals. *Id.* ¶ 27. Plaintiff told Dr. Branch that through experimentation he learned he could tolerate sharp cheddar cheese, corn tortilla, roasted peanuts, beef stew, Snickers, Nestle Crunch, barbeque-flavored chips, corn chips, tortilla chips and packaged dry salami. *Id.* Plaintiff stated he could not tolerate ramen noodles, milkshakes, ice cream and sour cream. *Id.* ¶ 28. Based on this information, Dr. Branch did not change her opinion that plaintiff did not require a special

3

diet. *Id.*

On July 7, 2016, plaintiff was seen again by Dr. Abernathy who conducted a skin test. Branch Decl. Ex. F. The skin test showed that plaintiff was allergic to shellfish and almonds which he stated he did not have an opportunity to eat. *Id.* Plaintiff also tested negative for a gluten allergy, with Dr. Abernathy stating, "[t]he sensitivity to gluten at least is ruled out on an IgE basis and I believe you have IgG RAST test to gluten. If they're negative, then gluten should not be a problem." *Id.* Dr. Abernathy spoke with Dr. Branch and told her that he suspected plaintiff's urticaria was caused by environmental allergens and pollen. *Id.*; Branch Decl. ¶ 30. Dr. Branch again concluded that plaintiff did not need a special diet. Branch Decl. ¶ 29.

Dr. Bright had multiple discussions with Dr. Branch regarding plaintiff and met with plaintiff to discuss his psoriasis treatment. Bright Decl. ¶¶ 7-8. Dr. Bright approved of plaintiff's medical treatment. *Id.* ¶ 9. Based on all the test results and treatment, Dr. Bright did not believe that plaintiff's symptoms were caused by food and that environmental allergies could be responsible. *Id.* ¶ 11. Dr. Bright did not believe that a special diet was medically indicated for plaintiff. *Id.* ¶12.

Plaintiff suffered allergic reactions resulting in skin rashes on several occasions while at San Quentin State Prison, and he received medical help. Docket No. 86 at 131-140. These occurred on or about May 5, 2014, May 13, 2014 and July 28, 2014. *Id.* Plaintiff suffered additional reactions on September 15, 2014 and July 26, 2016, at CTF and was treated by medical staff. *Id.* at 152. Plaintiff has jail and prison admission documents that state that he had celiac disease Docket No. 86 at 166-67, 169. Dr. Branch failed to provide lactose enzymes. Docket No. 85 at 6.

In response to a letter from plaintiff, Dr. Abernathy advised him in a letter dated September 19, 2016, that skin tests against foods are not always 100% accurate. Docket No. 86 at 107. He stated that there can be false positives and false negatives. *Id.* In response to another letter, Dr. Abernathy explained to plaintiff in a letter dated May 15, 2017, that the blood tests for gluten are accurate and specific but not totally sensitive. *Id.* at 108.

4

## LEGAL STANDARD

Summary judgment is proper where the pleadings, discovery, and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See id.*

A court shall grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial[,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Id.* The burden then shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *See id.* at 324 (citing Fed. R. Civ. P. 56(e) (amended 2010)).

For purposes of summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party; if the evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence submitted by the nonmoving party. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999). The Court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

Deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds, WMX*

*Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. *Id.* at 1059.

A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Id.* The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment, the presence of a medical condition that significantly affects an individual's daily activities, or the existence of chronic and substantial pain are examples of indications that a prisoner has a serious need for medical treatment. *Id.* at 1059-60.

A prison official is deliberately indifferent if he or she knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but "must also draw the inference." *Id.* If a prison official should have been aware of the risk, but did not actually know, the official has not violated the Eighth Amendment, no matter how severe the risk. *Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002). "A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981). In addition "mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference. . . . [Prisoner] would have . . . no claim for deliberate medical indifference unless the denial was harmful." *Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985).

Adequate food is a basic human need protected by the Eighth Amendment. *See Keenan v. Hall*, 83 F.3d 1083, 1091 (9th Cir. 1996), *amended*, 135 F.3d 1318 (9th Cir. 1998). The Eighth Amendment right to food was clearly established as of at least 2001. *Foster v. Runnels*, 554 F.3d 807, 815 (9th Cir. 2009). Denial of food service presents a sufficiently serious condition to meet the objective prong of the Eighth Amendment deliberate indifference analysis. *Id.* at 812-13; *see, e.g.*, *id.* (denial of 16 meals over 23 days was "a sufficiently serious deprivation because food is one of life's basic necessities"); *id.* at 812 n.1 (denial of 2 meals over 9-week period was not

6

sufficiently serious to meet objective prong of Eighth Amendment deliberate indifference). The Eighth Amendment requires only that prisoners receive food that is adequate to maintain health; it need not be tasty or aesthetically pleasing. *See Graves v. Arpaio*, 623 F.3d 1043, 1050 (9th Cir. 2010) (per curiam) (Eighth Amendment requires that pretrial detainees be given food that meets or exceeds the U.S. Department of Agriculture's Dietary Guidelines).

**DISCUSSION**

Plaintiff argues that defendants were deliberately indifferent in failing to take his food allergies seriously, for failing to provide proper treatment and for not providing a special diet. Defendants counter that they thoroughly investigated plaintiff's complaints and determined that plaintiff did not need a special diet or additional treatment than what they provided. Defendants point to the myriad of tests they administered, which came back negative, and their referral of plaintiff to the outside allergist and immunologist. All of the doctors concluded that plaintiff's symptoms were not caused by food allergies and that it was more likely caused by environmental allergens and pollen. Defendants have met their burden in showing that there is no genuine dispute as to any material fact and they are entitled to judgment as a matter of law. Plaintiff has failed to meet his burden in showing that there is a genuine issue for trial.

Plaintiff arrived at CTF in September 2014 and informed medical staff that he had a gluten allergy and several other food allergies. It is undisputed that plaintiff had a biopsy in 2011 to check for celiac disease, which is associated with a gluten allergy, and that plaintiff tested negative. It is also undisputed that plaintiff attempted to stop the gluten-free diet when he was receiving it at San Quentin State Prison.

In response to plaintiff's statements and concerns, Dr. Branch reviewed plaintiff's medical records but was unable to find any tests that confirmed plaintiff's beliefs regarding the allergies. Dr. Branch ordered two different tests for a gluten allergy, both of which came back negative. In response to plaintiff's additional complaints, Dr. Branch ordered further tests for egg white, cow's milk, wheat, rye, barley, oat, peanut, soybean, egg yolk, cheddar cheese, cheese mold, cocoa, soybean, white bean and lentils. All of these tests also came back negative for allergies.

To treat plaintiff for his urticaria skin reaction and possible food allergies, Dr. Branch sent,

and Dr. Bright approved, plaintiff's referral to an outside allergist and immunologist. After multiple meetings, the outside doctor conducted skin tests and concluded that plaintiff did not have a gluten allergy but was allergic to shellfish and almonds. It is undisputed that plaintiff does not eat these foods in prison. The outside doctor ruled out sensitivity to gluten and believed that the urticaria was caused by environmental allergens. In light of all the tests performed at CTF and with the outside doctor ruling out the gluten allergy, defendants concluded that plaintiff still did not require a special diet.

Defendants' determination does not demonstrate deliberate indifference because of the extensive medical testing and care employed to reach that decision. While plaintiff has a difference of opinion and believes he does have a gluten allergy and requires a special diet, "[a] difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." *Franklin*, 662 F.2d at 1344. Even if certain doctors who previously treated plaintiff stated he was allergic to gluten, defendants are still entitled to summary judgment. There were no test results in plaintiff's prison medical history that identified a gluten allergy, and the biopsy conducted in 2011 was negative.

Plaintiff argues that it is possible that all of the tests were incorrect and it is possible that he is allergic to gluten. While both of these premises are possible, plaintiff cannot rely on possibilities to meet the high standard of deliberate indifference. Defendants relied on multiple, different medical tests that are the standard diagnostic tests for food allergies. That these tests could only possibly be wrong does not demonstrate a constitutional violation.

There are references in various filings that plaintiff may have lost twenty pounds of weight during the first four and half months of his incarceration due to being unable to eat the prison food provided. It is undisputed that when Warden Spearman received this information in a letter from plaintiff's father, Warden Spearman contacted prison medical officials to investigate. It is also undisputed that the medical records reflect that plaintiff lost eight pounds over the four and a half month period that his body mass was normal for his weight and height. Defendants are entitled to summary judgment with respect to any claim that plaintiff was denied food adequate to maintain his health. Similarly, defendants are entitled to summary judgment with respect to any claim that

8

they were deliberately indifferent for failing to provide lactose enzymes. It is undisputed that while plaintiff was not able to consume ice cream, milkshakes or sour cream, he was able to eat cheese. Defendants provided plaintiff with sufficient nutrition and he has not shown that their denial of lactose enzymes violated the Eighth Amendment.

Plaintiff also notes that he suffered many allergic reactions during his time in prison. Most of these occurred while he was in San Quentin State Prison and did not involve defendants. Plaintiff was provided treatment after the few episodes of allergic reactions he suffered while at CTF. To the extent plaintiff wanted to be provided a different injection than what was provided, this fails to demonstrate an Eighth Amendment violation.

The undisputed evidence demonstrates that defendants provided an acceptable level of care with the diagnostic testing, outside referrals and other treatment provided for plaintiff's allergic reactions. While plaintiff disagrees with defendants' medical opinion and the diagnostic results, this fails to present a constitutional violation, and defendants are entitled to summary judgment.

**Qualified Immunity**

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The rule of "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Defendants can have a reasonable, but mistaken, belief about the facts or about what the law requires in any given situation. *Id.* at 205. A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (overruling the sequence of the two-part test that required determining a deprivation first and then deciding whether such right was clearly established, as required by *Saucier*). The Court may exercise its discretion in deciding which prong to address first, in light of the particular circumstances of each case. *Pearson*, 555

9

U.S. at 236.

Even if the Court were to find that defendants had deprived plaintiff of a constitutional right, they would still be entitled to qualified immunity. The record demonstrates that numerous diagnostic tests were employed to determine if plaintiff suffered from food allergies and if they were the cause of his symptoms and that plaintiff was referred to an outside doctor, who agreed with the course of treatment by defendants. It would not be clear to a reasonable official or doctor that following the results of the various medical tests and the outside doctor's opinion would be unlawful.

**CONCLUSION**

1. Defendants' motion for summary judgment (Docket No. 69) is **GRANTED**.

2. Defendants motion for an extension of time to file a reply to plaintiff's default judgment motion (Docket No. 96) is **GRANTED**. Plaintiff's motions for default judgment and damages (Docket Nos. 95, 99) are **DENIED** as meritless.

3. Plaintiff's motions to enforce subpoenas (Docket Nos. 91, 92, 93) are **DENIED** as moot because summary judgment is granted and the subject matter of the subpoenas was not relevant to the claims in this action.

4. The stay in this case (Docket No. 21) is **LIFTED**. The Clerk shall terminate all pending motions, enter judgment, and close the file

**IT IS SO ORDERED.**

Dated: January 16, 2018

JAMES DONATO
United States District Judge

1 UNITED STATES DISTRICT COURT
2 NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOEL DAVID KAUFMAN,<br>  Plaintiff,<br>v.<br>M. E. SPEARMAN, et al.,<br>  Defendants. | Case No. 15-cv-02777-JD<br><br>**CERTIFICATE OF SERVICE** |

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on January 16, 2018, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Joel David Kaufman
AT3133
P.O. Box 705
Soledad, CA 93960

Dated: January 16, 2018

Susan Y. Soong
Clerk, United States District Court

By: *Lisa R. Clark*
LISA R. CLARK, Deputy Clerk to the
Honorable JAMES DONATO

11